# Richmond.

## SPURGEON v. COMMONWEALTH.

### MARCH 13th, 1890.

1. CRIMINAL PROCEEDINGS—*Capital felony—Venire facias.*—Under Acts 1877–8, p. 340, in a case, wherein the punishment may be death, if the writ of *venire facias* commands the sheriff to summon sixteen instead of twenty-four jurors, or if the record does not show by whom the list was furnished, or that the writ was directed by the court, it is invalid.

2. APPELLATE PRACTICE—*Judgments before January* 18, 1888.—In criminal cases wherein judgment was rendered before passage of act of January 18, 1888 (Code, sec. 3156), failure of record to show affirmatively that the jury was regularly summoned, is error whereof advantage may be taken in the appellate court, though no objection was raised below.

3. IDEM—*Essentials—Record—Waiver.*—In proceedings involving deprivation of life or liberty, whatever is essential must affirmatively appear of record, and where a waiver by defendant leaves the record destitute of *an essential part* he may afterwards take advantage of the defect, notwithstanding the waiver.

Error to judgment of the judge of circuit court of Russell county, in vacation, affirming judgment of county court of said county, rendered at its March term, 1887, whereby plaintiff in error was sentenced, in accordance with the verdict of the jury, to confinement in the penitentiary for a term of twenty years for the alleged carnal knowledge of a female child under twelve years of age. Opinion states the case.

*Gent & Henry,* for the plaintiff in error.

*Attorney-General R. Taylor Scott,* for the commonwealth.

Lewis, P., delivered the opinion of the court.

The proceedings in this case appear to have been very irregularly conducted, but no objection, on that ground, appears to have been made by the accused in the county court.

There are copied into the record what purport to be three writs of *venire facias*. The first bears date February 25th, 1887, and commands the sheriff to summon " sixteen good and lawful jurors," whose names are given, to appear on the first day of the March term. But it does not recite, nor does it appear from the record, by whom the list of names was furnished.

By the statute in force at the time, it was provided as follows :

" 3. The writ of *venire facias* in a case of felony, other than where the punishment may be death, shall command the officer to whom it is directed, to summon sixteen persons of his county or corporation, to be taken from a list to be furnished him by the judge of his county or corporation, residing remote from the place where the offence is charged to have been committed, and qualified in other respects to serve as jurors, to attend the court wherein the accused is to be tried, on the first day of the next term thereof, or at such other time as the court or judge may direct." *    *    *

" 4. In a case where the punishment may death, the writ of *venire facias* shall require the officer to summon twenty-four persons, in the manner provided in section three of this chapter; and in any case of felony, where a sufficient number of jurors for the trial of the case cannot be had from those summoned and in attendance, the court may direct another *venire facias*, and cause to be summoned from the bystanders, or from a list to be furnished by the court, so many persons as may be deemed necessary to complete the jury," etc. Acts 1877–78, p. 340.

In *Hall's case*, 80 Va., 555, and in subsequent cases, it has been held that these provisions of this very statute were not

directory merely, but imperative, and that a strict compliance with them was essential to the validity of the proceedings. *Richards' case,* 81 Va., 110; *Honesty's case, Id.,* 283.

Nothing more, therefore, need be said to show that what purports to be the first writ of *venire facias* in the present case is invalid. The offence charged in the indictment being then, as now, one that may be punished with death, the writ ought to have commanded the officer to summon, not sixteen only, but twenty-four persons, *to be taken from a list furnished him by the judge.*

And what purports to be writ No. 2 is no better. It was issued after the commencement of the term, and commands the officer "to summon twenty-four good and lawful jurors," and a list containing the names of twenty-four persons is appended, as a part thereof, but by whom the list was furnished does not appear; nor does it appear that another *venire* was directed by *the court.*

What purports to be writ No. 3, subsequently issued, is similar in form to its immediate predecessor, the only difference being in the dates and the names of the persons on the list appended. It does not appear that it was directed by the court, or that the list was furnished by the court, and hence, like Nos. 1 and 2, it was not a valid writ.

Chitty lays it down, in treating of the form and contents of the record in a felony case, wherein there has been a conviction, that the record must state, among other things, the indictment, delivery of the indictment into court, the arraignment, the plea, the issue, *the award of jury process,* the verdict, the asking the prisoner why sentence should not be passed on him, and the judgment. 1 Chit. Crim. Law, 720. And Bishop says: "The leading purpose of the record, wherein, if it fails, it is certainly inadequate, is to set down and justify the punishment. Hence it must state what will affirmatively show the offence, the steps without which the sentence cannot be good, and the sentence." 1 Bish. Crim. Proc. (3d ed.), sec. 1347.

In other words, the record must affirmatively show that all *the essential* formalities in the procedure have been complied with, and a failure to do so constitutes error on the face of the record of which advantage may be taken on a writ of error, even though objection was not made by the accused in the trial court. As was said by the supreme court of the United States in *Hopt* v. *Utah*, 110 U. S., 574 : " That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods."

The provision of the statute, now brought into sec. 3156 of the Code, that " no irregularity in any writ of *venire facias*, or in the drawing, summoning, returning, or impaneling of jurors, shall be sufficient to set aside a verdict, unless the party making the objection was injured by the irregularity, or unless the objection was made before the swearing of the jury," had no application in felony cases when the judgment in the present case was pronounced, (Code, sec. 4048,) although it is otherwise now since the act of January 18, 1888. Acts 1887–88, p. 15.

It is sometimes difficult to determine what is, and what is not, essential, for the authorities are not altogether harmonious, and lay down no absolute rule, on the subject. There is no doubt that independently of the act last mentioned, objection to the competency of a juror cannot be made after he is sworn upon the jury, unless by leave of the court. *Poindexter's case,* 33 Gratt., 766. So, also, where the accused is given the right by statute or otherwise to have a copy of the indictment, or a list of the jurors or witnesses, before trial, he may waive the right either directly or indirectly; and the adjudged cases afford numerous illustrations of the same principle. But the doctrine of waiver does not extend to those matters that are made *essential,* and the reason is, that a strict compliance with all essential formalities in a felony case is necessary to con-

stitute a proceeding by " due process of law." Hence, as already remarked, such compliance must affirmatively appear by the record, since the presumption that a superior court of general jurisdiction acts rightly cannot supply the substantive parts of a proper record. *People* v. *McKay*, 18 Johns. 212; *Dougherty* v. *Commonwealth*, 69 Pa. St., 286; *Hall's case, supra.*

In *Wash's case*, 16 Gratt., 530, it was decided that the provision of the statute under consideration in that case, requiring the writ of *venire facias* to be issued at least twenty days before the commencement of the term, was directory merely, it being no otherwise intended for the benefit of the accused than as a means of ensuring a speedy trial; nor is that case in conflict with the recent decisions of this court, already mentioned, to the effect that the provisions of the statute, above quoted, to which attention has been particularly called, were not directory merely, but mandatory.

This being so, how stands the present case? If we look to the writs of *venire facias*, as they are copied into the record, it it is very clear that the statute was not complied with. But those writs are not properly a part of the record, as they were not made so by bill of exceptions or otherwise, and we have only referred to them by way of illustrating the proper procedure under the statute. Still, the result is the same; for laying them out of the case, there is nothing in the record to show that any jury process was issued in the case at all, much less that the jury was summoned according to the formalities prescribed by the statute. The record simply recites, after setting forth the arraignment and the plea, that thereupon a jury came, naming them; but by whom they were summoned, or how they got there, or how they were impanneled, does not appear. And this was error of which advantage may be taken in the appellate court, although no motion to quash or other objection was made in the court below, the judgment having been pronounced, as already remarked, before the act of January 18, 1888, went into effect, making the provisions of section 3156

of the Code apply to juries in all criminal cases as well as in civil cases.

Whatever is essential, we repeat, must affirmatively appear, and " where a waiver by the defendant leaves the record destitute of *an essential part*, he may afterward take advantage of the defect, notwithstanding the waiver." 1 Bish. Crim. Proc. (3d ed.), sec. 125.

The judgment, must, therefore, be reversed, and the case remanded for a new trial.

JUDGMENT REVERSED.